IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01703-MSK-MEH

ESTATE OF JOSEPH VALVERDE, by and through ISABELLE PADILLA, as representative and next of kin of the decedent,

 Plaintiff,

v.

JUSTIN DODGE, and
THE CITY AND COUNTY OF DENVER, COLORADO

 Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

 Before the Court is Defendants' Motion to Dismiss First Amended Complaint [filed October 25, 2016; ECF No. 30]. On April 17, 2017, the Honorable Marcia S. Krieger referred the motion to this Court for recommendation. The motion is fully briefed, and the Court finds that oral argument will not assist in its adjudication. Defendants' motion asks the Court to determine whether Plaintiff's Amended Complaint states individual and municipal liability claims against Defendants under 42 U.S.C. § 1983. For the following reasons, the Court respectfully recommends that Defendants' motion to dismiss be granted in part and denied in part.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file

## BACKGROUND

**I.    Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in the Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On July 2, 2014, the Denver Police Department ("DPD") arranged an undercover drug bust operation, where DPD's officers planned to arrest Joseph Valverde after selling him cocaine. Am. Compl. ¶ 12, ECF No. 27. During the deal, a white SUV drove into a nearby parking lot, and approximately seven members of the DPD SWAT team exited the vehicle and surrounded Valverde. *Id.* at ¶ 17. Immediately after Valverde noticed the SWAT team, he discarded his handgun on the ground without pointing it at any officers or bystanders. *Id.* at ¶¶ 18, 21. Valverde then raised both of his hands near his head in an obvious position of surrender. *Id.* at ¶ 19. While Valverde's gun was on the ground and his empty hands were in the air, Defendant Dodge discharged his assault rifle multiple times at Valverde, which eventually led to his death. *Id.* at ¶ 20.

After the incident, Dodge gave false accounts of the shooting to investigators and other personnel, including a statement that he fired his weapon after he saw Valverde raise the gun towards him. *Id.* at ¶ 25. Additionally, Denver issued public statements designed to cover up and conceal the use of unnecessary deadly force. *Id.* at ¶ 27. Specifically, Denver stated that Dodge shot Valverde only after Valverde advanced on Dodge's fellow officers with a raised weapon. *Id.* at ¶

---

written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

28. Denver allegedly labeled Dodge a hero and took the position that Dodge's conduct was consistent with DPD policies and procedures. *Id.* at ¶¶ 29–30.

## II. Procedural History

Based on these factual allegations, Plaintiff filed its original Complaint on July 3, 2016. On September 22, 2016, Defendants filed a Motion to Dismiss the Complaint. ECF No. 17. In response to Defendants' motion, Plaintiff filed the operative Amended Complaint as a matter of course. ECF No. 27. Plaintiff's Amended Complaint asserts two causes of action under 42 U.S.C. § 1983: (1) a Fourth Amendment violation against Dodge in his individual capacity and (2) a municipal liability claim against Denver. Am. Compl. ¶¶ 42–59.

On October 25, 2016, Defendants filed the present Motion to Dismiss for Failure to State a Claim. ECF No. 30. First, Defendants argue that, in deciding their motion, the Court should consider video evidence of the alleged incident. Defs.' Mot. 2–4. Incorporating this evidence, Defendants contend Dodge is entitled to qualified immunity, because the shooting did not violate clearly established federal law. *Id.* at 5–13. Next, Defendants argue Plaintiff fails to assert a plausible municipal liability claim against Denver. *Id.* at 13–26. In its response, Plaintiff contends the Court's analysis must be confined to the four corners of the Amended Complaint, Dodge's actions violate clearly established federal law, and "Plaintiff has presented a robust set of *Monell* allegations against Denver." Pl.'s Resp. ECF No. 37. Defendants filed a Reply in Support of their Motion on December 5, 2016. ECF No. 38. After the Honorable Kathleen M. Tafoya recused herself from this case, it was reassigned to this Court on April 17, 2017. ECF No. 40.

## **LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## **ANALYSIS**

The issues before the Court are whether it should consider Defendants' video evidence at this stage of the proceeding, whether Plaintiff has alleged Dodge's actions violated clearly established constitutional law, and whether Plaintiff sufficiently pleads a municipal liability claim against

4

Denver. The Court will address each issue in turn.

I.  **Consideration of Video Evidence**

Defendants first argue that, in determining whether Plaintiff's Amended Complaint states a claim, the Court should consider video evidence of the underlying incident. Defs.' Mot. 2–4. According to Defendants, this is proper, because Plaintiff referenced the video in the original Complaint, and the Amended Complaint refers to the incident depicted in the video. *Id.*; Defs.' Reply 2. Plaintiff contends the Court cannot consider the evidence, because it did not specifically reference or incorporate the video into the Amended Complaint. Pl.'s Resp. 8–9. The Court agrees with Plaintiff.

At the motion to dismiss stage, courts generally cannot consider evidence outside of the pleadings. *See, e.g.*, *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("Generally, the sufficiency of a complaint must rest on its contents alone."). The only exceptions to this well-established rule are for "(1) documents that the complaint incorporates by reference, (2) 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity,' and (3) 'matters of which a court may take judicial notice.'" *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) (internal citations omitted).

Here, Defendants first argue that consideration of the outside evidence is proper, because Plaintiff specifically referenced the video in the original Complaint. Defs.' Mot. 3. However, "it is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665 (2d. Cir. 1977)). Because the original Complaint is of no

5

effect, the Court cannot consider allegations or documents Plaintiff references only in the original Complaint. *See id.*; *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998) (holding that the court could not consider allegations the plaintiff asserted only in a prior pleading, because "facts not incorporated into the amended pleading are considered *functus officio*").

In their reply brief, Defendants contend that the Amended Complaint references the video, because the alleged conduct is depicted on the video. Defs.' Reply 9. However, the limited exceptions to what the court can consider at this stage require that the plaintiff specifically reference or incorporate the evidence. *Gee*, 627 F.3d at 1186. Plaintiff does not mention the video in its amended pleading. Indeed, after reading the Amended Complaint, the Court was not aware that a video of the incident exists. Moreover, because Plaintiff did not rely on the video in asserting its claims for relief, the rationale underlying the exception does not apply. *See GFF Corp. v. Assoc. Wholesale Grp. Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) (stating that the exception for documents referenced in the complaint exists, because "if the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss by not attaching a dispositive document on which the plaintiff relied").

The cases Defendants cite do not support their position. First, Defendants rely on *Jackson v. Alexander*, 465 F.2d 1389, 1390 (10th Cir. 1972), for the proposition that courts need not accept as true allegations in the complaint to the extent they are contradicted by undisputed video evidence. Defs.' Mot. 3. However, the *Jackson* court held only that courts need not accept as true "allegations of fact that are at variance with the express terms of an instrument *attached to* the complaint as an exhibit and made a part thereof." 465 F.2d at 1390 (emphasis added). Because Plaintiff did not attach the video to the Amended Complaint, *Jackson* does not support Defendants' argument.

6

Similarly, in *Jackson v. Gatto*, the plaintiff pleaded that the officer "activated the audio/video device in his vehicle and recorded the majority of the events that are the subject of this complaint." No. 13-cv-02516-CBS, 2014 WL 2743130, at *3 (D. Colo. June 17, 2014). Therefore, unlike in the present case, the plaintiff in that case specifically referenced the video in the operative pleading. Next, Defendants cite *Scott v. Harris*, 550 U.S. 372 (2007) and *Thomas v. Durastanti*, 607 F.3d 655 (10th Cir. 2010) for the proposition that courts should reject a plaintiff's version of events when videotape evidence clearly contradicts the allegations. Defs.' Mot. 3. However, in both of these cases the courts were determining summary judgment motions, at which stage consideration of material outside the pleadings is clearly appropriate. Because the Court is currently confined to the four corners of the Amended Complaint, it will not consider the video evidence in ruling on Defendants' motion.

## II.  Individual Capacity Claim

Plaintiff's first cause of action asserts an excessive force claim against Dodge in his individual capacity. Am. Compl. ¶¶ 42–49. Defendants argue Dodge is entitled to qualified immunity, because Plaintiff fails to allege that Dodge's actions violated clearly established constitutional law. The Court disagrees and holds that Plaintiff pleads a constitutional violation.

Qualified immunity protects a public official whose possible violation of a plaintiff's civil rights was not clearly established at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006). "A qualified immunity defense is only available to parties sued in their individual capacity." *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). "When faced with a qualified immunity defense, the plaintiff must establish '(1) that the

7

defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions.'" *Id.* (quoting *Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999)); *Wilson v. Layne*, 526 U.S. 603, 603 (1999). Courts are now "at liberty to embark upon the two-part qualified immunity analysis in any order [they] choose . . . ." *Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Nevertheless, the Court will first address whether Dodge's actions, as alleged, violated Plaintiff's constitutional rights. The Court will then analyze whether any violation of Plaintiff's rights was clearly established.

  A.  <u>Constitutional Violation</u>

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The "reasonableness" inquiry is an objective one—*i.e.* "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. In determining whether an exercise of force was reasonable under the Fourth Amendment, courts consider: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

  Specific to the use of deadly force, such "force is justified under the Fourth Amendment if a reasonable officer in Defendants' position would have had probable cause to believe that there was a *threat of serious physical harm to themselves* or to others." *Estate of Larsen ex rel. Sturdivan v.*

*Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (quoting *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004)). When analyzing the reasonableness of deadly force, courts generally consider an additional four non-exclusive factors: "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Id.*

Accepting Plaintiff's allegations as true, the Court holds that Plaintiff has asserted a plausible Fourth Amendment violation. Regarding the factors articulated in *Graham*, Valverde was unarmed, had not threatened police, and had his hands above his head in a position of surrender. Am. Compl. ¶¶ 18–21. Therefore, although drug crimes are relatively serious, Valverde did not pose an immediate threat to the safety of the officers or others, and he was not resisting arrest. To the contrary, Valverde had allegedly surrendered to the officers by placing himself in a vulnerable position. Moreover, the factors specific to the use of deadly force further support Plaintiff's argument that Dodge unreasonably fired his rifle. Although the officers never ordered Valverde to drop his weapon, he allegedly did so without "brandish[ing], rais[ing], threaten[ing], or point[ing] the weapon at anyone." *Id.* at ¶¶ 22–23. The Amended Complaint does not state the distance separating Dodge and Valverde, but Plaintiff alleges that by placing his hands above his head, Valverde demonstrated his intent "to disarm himself of his weapon and surrender . . . ." *Id.* at ¶ 22. Because Plaintiff's allegations plausibly state that Dodge's use of force was unreasonable, Plaintiff has stated a Fourth Amendment claim.

None of Defendants' arguments to the contrary are availing. First, many of Defendants' contentions rest on the notion that Valverde was armed when Dodge shot him. According to

9

Defendants, it is patently reasonable to shoot an armed individual who is suspected of drug violations and refuses police commands to lay on the ground. Defs.' Mot. 8–11. However, accepting Plaintiff's allegations as true, Dodge fired his weapon after Valverde placed his gun on the ground and raised his hands above his head. Am. Compl. ¶¶ 19–20. Although Defendants may be able to rely on video evidence at summary judgment to argue that Dodge's conduct was reasonable, at this stage the Court must accept Plaintiff's allegation that Valverde was unarmed. Therefore, the cases Defendants cite, such as *Wilson v. Meeks*, 52 F.3d 1547, 1556 (10th Cir. 1995) and *Phillips v. James*, 422 F.3d 1075 (10th Cir. 2005), which found that officers did not use excessive force when the suspect still possessed a gun, are not helpful to the Court's current Rule 12(b)(6) analysis. Similarly, Defendants rely on *Thomson v. Salt Lake County*, 584 F.3d 1304 (10th Cir. 2009) for the proposition that a reasonable but mistaken belief that an individual might fight back justifies using more force than is actually needed. Defs.' Mot. 10. However, Plaintiff's allegations that Valverde had his hands raised and was unarmed at the time of the shooting are sufficient to plausibly state that Dodge unreasonably believed Valverde might fight back.

Second, Defendants claim that even if the Court does not accept the video evidence at this stage, the fact that Valverde pulled his gun out just seconds before the shooting makes the use of force inherently reasonable. Defs.' Reply 9–10. According to Defendants, Tenth Circuit precedent makes clear that courts must not focus on the threat to the officers at the exact moment of the shooting, but should look at the totality of the circumstances. Defs.' Reply 10 (citing *Thomson*, 584 F.3d at 1318 (rejecting an argument that a use of deadly force was unreasonable because the suspect pointed his gun at his own head immediately before the officer fired the shot)). However, the Amended Complaint does not state that Valverde disarmed himself just seconds before the shooting.

Defendants establish this fact by citing to the video of the shooting, which is evidence the Court cannot rely on at this stage. Even if the Amended Complaint alleged that Valverde dropped his gun immediately before the shooting, *Thomson* made clear that a possession of a weapon even seconds before a fatal shooting is not necessarily sufficient to make the use of force reasonable; instead, courts must look at the totality of the circumstances. *Thomson*, 584 F.3d at 1313. For this reason, the court in *Thomson* found it important that the plaintiff was still in possession of a firearm, was known to have threatened others, and had aimed the firearm directly at the officers. *Id.* at 1318. Here, Plaintiff's allegations tell a different story. Plaintiff was not armed, had not threatened anyone, and had never aimed the weapon at the officers. Am. Compl. ¶¶ 19, 21. Therefore, the Court does not find that Dodge's conduct was inherently reasonable. As such, Plaintiff has stated a Fourth Amendment claim against Dodge in his individual capacity.

  B. <u>Clearly Established Law</u>

That a complaint states a constitutional violation against an officer is not sufficient to withstand a Rule 12(b)(6) motion when the officer claims entitlement to qualified immunity. *See Maresca v. Bernalillo Cty.*, 804 F.3d 1301, 1307 (10th Cir. 2015). The plaintiff must also demonstrate that the constitutional violation was clearly established. *Id.* That is, "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Ordinarily, this means that 'there must be a Supreme Court or Tenth Circuit decision on point . . . [finding] the law to be as the plaintiff maintains.'" *Maresca*, 804 F.3d at 1308 (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007)). However, the standard does not require that "the very action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640.

Plaintiff argues it was clearly established at the time of the shooting that an officer could not use deadly force against an unarmed suspect who was visibly attempting to surrender. Pl.'s Resp. 25. The Court agrees and holds that Plaintiff has met its burden of pointing to Supreme Court or Tenth Circuit cases establishing that Dodge's conduct was unreasonable. Plaintiff first cites to *Tennesee v. Garner*, 471 U.S. 1, 11 (1985). In that case, the Supreme Court held that "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id.* Applying this rule, the Court held that using deadly force on an unarmed nighttime burglar was unreasonable. *Id.* at 20–21. An officer could infer from this holding that it would be unreasonable to use deadly force on a man suspected of a drug crime who was unarmed and had his hands in a position of surrender above his head.

Plaintiff also relies on *Estate of Larsen* and *Thomson* for the proposition that, to pose an imminent threat so as to justify the use of deadly force, the suspect must take some dangerous action beyond merely possessing a weapon at some point. Pl.'s Resp. 29. In *Estate of Larsen*, the Tenth Circuit found that a use of deadly force was justified, because the suspect threatened violence and took a step towards one of the officers with a knife pointed towards the officer. 511 F.3d at 1260. Similarly, in *Thomson*, the armed suspect was known to have threatened his wife and refused instructions to put his weapon down. 584 F.3d at 1318–19. The Court holds that *Estate of Larsen*, and *Thomson* would put a reasonable officer on notice that it would be unconstitutional to use deadly force on a suspect who does not possess a weapon, has not threatened violence, and is voluntarily surrendering. Therefore, the Court recommends holding that Dodge is not entitled to qualified immunity at this stage. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("[I]t is unreasonable

12

for an officer to 'seize an unarmed, nondangerous suspect by shooting him dead.'" (quoting *Garner*, 471 U.S. at 11)).

### III. Municipal Liability Claim

Plaintiff's second claim for relief asserts Denver is liable for the violation of Plaintiff's Fourth Amendment rights, because Denver's policies and practices were a moving force behind the violation. Local governments can be liable under Section 1983 "only for their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Hence, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 692 (1978)). Rather, to prove a Section 1983 claim against a municipality, a plaintiff must demonstrate the existence of a municipal policy or custom, which directly caused the alleged injury. *Hinton*, 997 F.2d at 782 (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). A plaintiff may show a municipal policy or custom in the form of any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoetler v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)) (internal quotations omitted). To establish the second element, causation, the plaintiff must assert that the municipality's conduct is "closely related to the ultimate injury." *Harris*, 489 U.S. at 391. To require anything less would

13

subject to the municipality to "vicarious liability of the type that *Monell* rejected." *Martinez v. City & County of Denver*, No. 11-cv-00102-MSK-KLM, 2013 WL 5366980, at *15 (D. Colo. Sept. 25, 2013).

In this case, Plaintiff makes four separate arguments to establish a municipal policy or custom—a formal policy, an informal custom, Denver's ratification of Dodge's actions, and Denver's failure to adequately train or supervise its officers. Am. Compl. ¶¶ 51–59; Pl.'s Resp. 33–36. Albeit barely, the Court recommends holding that Plaintiff has met its burden of alleging a plausible entity liability claim. The Court finds Plaintiff asserts an unconstitutional informal custom and a failure to adequately train. However, Plaintiff has not alleged the existence of a constitutionally defective formal policy or that Denver's ratification of Dodge's actions caused Valverde's injuries. The Court will address each theory of liability in turn.

A. Informal Custom

To establish an informal custom or practice, a plaintiff must prove:

(1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct . . .; (2) Deliberate indifference to or tacit approval of such misconduct by the [municipality's] policymaking officials . . . after notice to the officials of that particular misconduct; and (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the . . . custom."

*Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cty. Kan.*, 996 F.2d 1035, 1040 (10th Cir. 1993). Plaintiffs generally show a widespread practice of unconstitutional misconduct by pointing to a record of complaints, statistics, or similar violations. *Bryson*, 627 F.3d at 789 (finding that the plaintiff did not assert a municipal liability claim, in part because, "the City has not yet received any complaints or criticisms of [similar conduct]."); *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1187 (D.N.M. 2014) (holding that the plaintiff did not plead an informal custom, because he "has

not alleged any facts—such as statistics, records of complaints filed with the city, or even anecdotal evidence—that would indicate that the misconduct alleged in this case was more than an isolated incident"); *McAllister v. Kellogg*, No. 13-cv-02896-CMA-MJW, 2015 WL 2329425, at *9 (D. Colo. May 14, 2015) (same).

Here, Plaintiff alleges Denver fostered an informal "shoot first, ask later" custom. Am. Compl. ¶¶ 33, 54. The Court holds that, although a close call, Plaintiff provides sufficient allegations to demonstrate an informal policy. First, Plaintiff references a complaint in a separate case, which in turn asserts that Denver's officers have been involved in five fatal shootings since 2004.[2] Am. Compl. ¶ 35; *see Ronquillo v. Denver*, No. 16-cv-01664-CMA-NYW, ECF No. 1, at 29–30; *Booker v. Denver*, No. 11-cv-00645-RBJ-KMT, ECF No. 36, at 28, 32. Moreover, the 2009 shootings referenced in *Booker* were of unarmed individuals, one of whom had recently dropped a weapon. The Court finds these cases sufficiently similar to at least provide some evidence of an informal "shoot first" custom within DPD.

Although five incidents may not be enough by itself to establish an informal custom, Plaintiff alleges that Denver purposefully made false statements to cover up the use of unreasonable force. Am. Compl. ¶ 28. The Tenth Circuit has stated that "[a] subsequent cover-up might provide

---

[2] Although the details of these specific instances appear in a complaint filed in a separate lawsuit, the Court can accept these allegations, because Plaintiff references the separate complaint in its Amended Complaint. *See Gee*, 627 F.3d at 1186 (stating that courts can accept documents the complaint incorporates by reference). However, the Court notes that it cannot consider Plaintiff's allegations of events that took place on the same day or after the shooting underlying this lawsuit. These incidents could not have provided Denver with prior notice of particular misconduct, as is required to demonstrate deliberate indifference. *Gates*, 996 F.2d at 1040 (finding that the plaintiff did not plead a municipal liability claim where "there [was] no showing that the defendants had notice of [the custom]"); *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("[B]asic principals of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation.").

circumstantial evidence that the city viewed [its official policy] as a policy in name only and routinely encouraged contrary behavior." *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009); *see also Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) ("The disposition of the policymaker may be inferred from his conduct after the events of that night."). According to the Amended Complaint, "Denver made false public statements," including a public assertion that Valverde "began advancing on Sergeant Dodge's fellow officers . . . with a raised gun." Am. Compl. ¶ 28. Denver allegedly made this statement in an "effort[] to cover up and conceal the truth of the shooting . . . ." *Id.* at ¶ 31. Because this alleged cover-up provides some evidence that Denver routinely encouraged a "shoot first" informal policy, the Court recommends holding that Plaintiff has asserted an unconstitutional policy or custom.

The Court also finds that the alleged policy was the moving force behind the shooting. To carry its burden on causation, Plaintiff must assert that the "shoot first" policy was tied to Dodge's use of deadly force against Valverde. *Martinez*, 2013 WL 5366980, at *15. According to the Amended Complaint, Denver's cultivation of this policy has led to a "belief among officers that prematurely shooting someone to defeat a possible threat that lacks imminence may be reasonable." Am. Compl. ¶ 40. In accordance with this belief, Dodge fired his weapon while Valverde was unarmed and had his hands up. *Id.* at ¶ 59. The Court finds this case distinct from *Martinez*, where the court held that the plaintiffs had not alleged causation. 2013 WL 5366980, at *15. According to the *Martinez* court, the plaintiffs' response made "no effort whatsoever to tie the alleged deficiencies in Denver's policies to the particular violations alleged here, other than [to] draw them all under the general umbrella of 'excessive force.'" *Id.* Here, Denver's alleged "shoot first" custom is directly connected to Dodge's premature decision to fire his weapon at Valverde. Therefore, the

16

Court recommends holding that the Amended Complaint plausibly states a municipal liability claim based on Denver's informal policy or custom.

B.  Failure to Train or Supervise

Next, Plaintiff claims Denver is liable for failing to adequately train its officers on the imminence of harm. Am. Compl. ¶ 38. "[P]roving that a municipality itself actually caused a constitutional violation by failing to train the offending employee presents 'difficult problems of proof,' and we must adhere to a 'stringent standard of fault,' lest municipal liability under § 1983 collapse into *respondeat superior*." *Connick*, 563 U.S. at 69. In this context, Plaintiff must allege facts sufficient to suggest that the failure to train "amounts to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *See id.* at 61.

Deliberate indifference is established only "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," but they "choose to retain that program." *Id.* As explained by the Court in *Connick*:

> [a] pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Id.* at 62.

Here, the Court finds that Plaintiff has plausibly alleged a failure to train. According to the Amended Complaint, "[t]raining failures regarding key issues such as the imminence of harm and

17

the common-sense need to provide suspects with reasonable commands, warnings, and opportunities to surrender and/or comply are illustrated by the string of similar incidents identified above." Am. Compl. ¶ 38. Among these "similar incidents" are at least two shootings where the suspect was unarmed. *See Ronquillo v. Denver*, No. 16-cv-01664-CMA-NYW, ECF No. 1, at 29–30; *Booker v. Denver*, No. 11-cv-00645-RBJ-KMT, ECF No. 36, at 28, 32. Moreover, just as is true with an informal custom, "[a] subsequent cover-up might provide circumstantial evidence that the city viewed [its official training policy] as a policy in name only and routinely" trained its officers in an different manner. *Cordova*, 569 F.3d at 1194. Therefore, Plaintiff's allegation that Denver deliberately made false statements to conceal the unreasonable use of force provides support for the notion that Denver improperly trained its officers on the use of deadly force. Am. Compl. ¶ 28. Furthermore, instead of disciplining Dodge for shooting an unarmed man who was attempting to surrender, Denver allegedly "issued Defendant Dodge an award for his conduct during the incident." *Id.* at ¶ 30. The Court finds this sufficient to plausibly allege Denver was deliberately indifferent to the inadequacy of its training, supervision, and discipline of its officers. *See Grandstaff*, 767 F.2d at 171 (stating that "if prior policy had been violated, we would expect to see a different reaction"). The Court also finds that Denver's alleged lack of training on the imminence of harm is directly connected to Dodge's decision to incorrectly assess the situation and hastily fire his weapon. As such, the Court recommends holding that Plaintiff plausibly states a municipal liability claim against Denver for failure to adequately train, supervise, and discipline its officers.

C. Formal Policy

Plaintiff also alleges that Denver has unconstitutional formal policies. Am. Compl. ¶ 37. Specifically, Plaintiff contends Denver's use of force policy is deficient, because it does not define

18

"imminent threat," it requires warnings before the use of deadly force only "when feasible," and it provides no guidance to its officers about the necessity of providing suspects a reasonable opportunity to surrender. *Id.* The Court finds that these alleged deficiencies do not render the policy constitutionally deficient. Indeed, Plaintiff does not cite, and the Court does not find, any precedent requiring that use of force policies define "imminence" or that officers must invariably provide an opportunity to surrender. Moreover, Supreme Court precedent dictates that warnings should be given before the use of deadly force only where feasible. *See, e.g.*, *Garner*, 471 U.S. at 11–12. Therefore, to the extent Plaintiff attempts to assert a municipal liability claim based on Denver's formal policies, the Court recommends holding that Plaintiff fails to state a claim.

### D. Ratification

Lastly, Plaintiff alleges Denver is liable for the shooting, because Denver ratified Dodge's unconstitutional conduct. Am. Compl. ¶¶ 27–32; 52. "[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson*, 627 F.3d at 790. Here, Plaintiff contends that by declaring the shooting to be within DPD policy, Denver ratified Dodge's unconstitutional actions. Am. Compl. ¶¶ 27–32. However, even assuming this constitutes ratification, Plaintiff has not alleged "that the ratification [was] the moving force, or cause, of the alleged constitutional violation." *Dempsey v. City of Baldwin*, 143 F. App'x 976, 986 (10th Cir. 2005). Indeed, because the alleged ratification happened after the shooting, Plaintiff had already suffered the injury by the time it occurred. Therefore, Denver's acceptance and praise of Dodge's conduct did not cause Valverde's injury. The Court recommends dismissing Plaintiff's Amended Complaint to the extent it asserts Denver is liable for ratifying Dodge's conduct.

19

**CONCLUSION**

The Court first holds that it may not consider video evidence of the underlying incident at the motion to dismiss stage. Accepting Plaintiff's allegations as true, Plaintiff has plausibly asserted a Fourth Amendment violation against Dodge in his individual capacity. Additionally, the Court holds Plaintiff has alleged that Valverde's shooting was caused by Denver's informal "shoot first" custom and Denver's failure to adequately train and supervise its officers. However, the Court holds Plaintiff has not pleaded an unconstitutional formal policy or that Denver's "ratification" of the shooting caused the alleged harm. Accordingly, the Court respectfully recommends that Defendants' Motion to Dismiss First Amended Complaint [filed October 25, 2016; ECF No. 30] be **granted in part and denied in part**.

Entered and dated at Denver, Colorado, this 9th day of May, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge