IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-CV-1703-MSK-MEH

ESTATE OF JOSEPH VALVERDE, by and through ISABEL PADILLA, as personal representative,

    Plaintiff,

v.

JUSTIN DODGE; and
The CITY AND COUNTY OF DENVER, COLORADO,

    Defendants.

---

## OPINION AND ORDER ADOPTING RECOMMENDATION AND GRANTING IN PART MOTION TO DISMISS

---

**THIS MATTER** comes before the Court on the Magistrate Judge's Recommendation (**# 41**) that the Defendants' Motion to Dismiss (**# 30**) be granted in part and denied in part, and the Defendants' timely filed objections thereto (**# 42**). For the following reasons, the Recommendation is adopted and the motion is granted in part and denied in part.

### I. BACKGROUND[1]

The Amended Complaint alleges that in July 2014, the Denver Police Department (DPD) performed an undercover drug operation wherein officers planned to arrest Joseph Valverde after selling him cocaine. During the drug sale, officers were located in a close-by parking lot. Approximately seven SWAT officers approached and surrounded Mr. Valverde, who initially pulled a firearm from his waistband, then dropped it and raised empty hands near his head.

---

[1] The Court recounts the facts as alleged in the Amended Complaint (**# 27**), with supplementation as necessary in the discussion that follows.

1

Despite the fact that Mr. Valverde held no firearm (and it was on the ground), Defendant Justin Dodge shot Mr. Valverde multiple times, killing him. After the incident, Officer Dodge gave false accounts to investigators, stating that he saw Mr. Valverde raise and point his firearm. The City and County of Denver (City) made a public announcement that Officer Dodge fired only after Mr. Valverde advanced with his weapon raised, and declared Officer Dodge to be a hero and his conduct to be consistent with DPD policies and procedures.

The Plaintiff brought this suit in July 2016, alleging that Officer Dodge had used excessive force violating of Mr. Valverde's Fourth Amendment rights and that the City was liable for Officer Dodge's conduct under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). The Defendants move to dismiss all claims (**# 27**). The Defendants argue that Officer Dodge is entitled to qualified immunity and that the Plaintiff has not sufficiently alleged a basis for municipal liability. The Plaintiff responds that the law with regard to the excessive force claim is clearly established and that the City is liable under *Monell* because (1) the City had an informal custom of "shoot first, ask later"; (2) the City failed to train or supervise its officers; (3) the City had an unconstitutional formal policy; and (4) the City ratified Officer Dodge's conduct.

The Motion to Dismiss was referred to the Magistrate Judge, who recommended that it be granted, in part, as to two theories underlying the *Monell* claim, but denied in all other respects. The Defendants object to the Recommendation arguing that (1) the Magistrate Judge should have considered video evidence referenced in the original Complaint (but not the Amended Complaint) in conjunction with the assertion of a defense of qualified immunity; (2) the Magistrate Judge should not have considered other cases in assessing whether there was adequate pleading of a custom or practice sufficient to support municipal liability; and (3) the

Amended Complaint had insufficient factual allegations to support a claim of municipal liability based on failure to train its officers.

## II. LEGAL STANDARDS

When a Magistrate Judge issues a recommendation on a dispositive motion, the parties may file specific, written objections within fourteen days after being served with a copy of the recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court makes a de novo determination of those portions of the recommendation to which timely and specific objection is made. *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the complaint, any exhibits attached thereto, and any external documents that are incorporated by reference. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). However, a court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity. *Alvarado v. KOB-TV LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the complaint that are merely legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. The Court then

takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a "plausible" as compared to a "conceivable" claim. *See: Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## III. DISCUSSION

There is no dispute that a police officer's use of excessive force in apprehending a suspect violates the suspect's rights under the Fourth Amendment to the United States Constitution. Whether the force used in this case was excessive at this juncture requires the Court to consider the totality of the circumstances described in the Amended Complaint to determine whether the force described could be viewed as objectively unreasonable. Several non-exclusive factors are considered — the severity of the crime at issue, whether the suspect posed an immediate risk of harm to an officer or another person, whether the suspect was evading arrest, and whether the officer's own conduct created the need to use any force. The reasonableness of an officer's actions is evaluated "from the on-scene perspective, not with the advantage of 20/20 hindsight." *Jiron v. City of Lakewood*, 392 F.3d 410, 414–15, 418 (10th Cir. 2004).

### A. Qualified Immunity for Officer Dodge

Officer Dodge invokes the doctrine of qualified immunity. Qualified immunity protects individual state actors from civil liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). The qualified immunity analysis proceeds along two lines: (1) the Court examines whether the facts alleged in the plaintiff's pleading are sufficient to state a cognizable claim for violation of a constitutional right, and (2)

the Court also examines whether it was clearly established, at the time of the event, that the officer's conduct violated constitutional rights of the suspect. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court may undertake these two inquiries in whichever order is appropriate for the case.

For all practical purposes, the first inquiry is indistinguishable from the inquiry that the Court would take in assessing a Rule 12(b)(6) challenge to sufficiency of the pleadings. The Court considers the well-pled allegations in the light most favorable to the plaintiff and assess whether the facts alleged are sufficient to demonstrate the violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The "clearly established" inquiry then examines whether the well settled law determined that the conduct at issue in the circumstances presented would violate a constitutional right. Put another way, would a reasonable officer would have understood, based on case precedent, that what he/she was doing would violate a constitutional right. *See Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). With regard to this prong, the burden is on the plaintiff to point to Supreme Court or Tenth Circuit precedent (or a clear weight of other circuit courts) that recognizes an actionable constitutional violation in the circumstances presented. *See Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012); *Thomas v. Durstanti*, 607 F.3d 655, 669 (10th Cir. 2010). It is not necessary for the plaintiff to point to a case with identical facts, but he must identify some authority that considers the issue not as a broad general proposition, but in a particularized sense — for example, it is not sufficient to ask whether it is "clearly established" that the Fourth Amendment prohibits the use of excessive force in effecting an arrest; rather, a court must examines whether that constitutional principle has previously been found to prohibit shooting a similar circumstance. *See, e.g.*, *Brosseau v. Haugen*, 543 U.S. 194, 198–200 (2004).

Officer Dodge's primary objection to the Magistrate Judge's recommendation that the claim against him not be dismissed is that the Magistrate Judge improperly declined to review a video that was referenced in the initial Complaint but not the Amended Complaint. Officer Dodge contends that if the Magistrate Judge had reviewed the video, it would be clear that there was justification for his shooting of Mr. Valverde, and thus the claim would not be cognizable under Fed. R. Civ. P. 12(b)(6).

The Court pauses to observe that its analysis at the Motion to Dismiss stage is on the sufficiency of pleading, not the sufficiency of evidence, which is reserved to the Rule 56 stage, and not to determine disputed facts which is reserved to trial. At this stage in the proceedings, the Court looks only to the allegations in the Amended Complaint to determine the plausibility of a claim in response to Officer Dodge's claim to qualified immunity.

Although the question of whether a video that is referenced in an initial Complaint but not in the Amended Complaint should be considered for purposes of Rule 12(b)(6) analysis is an interesting one, the Court need not resolve it. The standard for a plausible claim of use of excessive force under circumstances like these is articulated in *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) - it is unreasonable to use deadly force against an unarmed, nondangerous suspect that poses no immediate threat to officers or others. The well-pled allegations in the Amended Complaint construed most favorably to the Plaintiff are sufficient to state this claim. According to the Amended Complaint, before Officer Dodge fired, Mr. Valverde had "discarded his gun on the ground" and "immediately raised both his hands up in the air, near his head, to an obvious position of surrender and to show the approaching law enforcement officers that his hands were visibly empty." *See:* # 27, ¶¶ 18–23, 43–44. Officer Dodge shot Mr. Valverde multiple times while his "visibly empty hands were raised up in the air near his head," and Mr. Valverde never

"point[ed] his gun at anyone or threaten[ed] anyone with the gun, including approaching law enforcement officers." # 27, ¶¶ 20–21. Taken as true, these allegations are sufficient to state a plausible claim that Officer Dodge used excessive force when he shot Mr. Valverde. What the video shows does not change this analysis. Even if it showed something contrary to the allegations, the Court could not properly resolve any factual inconsistencies at this juncture.

The facts as alleged are that Officer Dodge shot Mr. Valverde when his hands were raised above his head, his weapon was on the ground, and he posed no threat to officers involved in his arrest. As to whether there was clearly established law making such conduct unconstitutional, the Plaintiff points to *Garner*, 471 U.S. at 11. Although *Garner* involves a fleeing suspect, the conduct is for all salient purposes the same as that alleged in the Amended Complaint. Officer Dodge has no objection to the sufficiency of this case law as clearly establishing that the conduct describe in the Amended Complaint would be unconstitutional. Instead, he argues that a different set of facts apply. He argues that officers may use deadly force if a suspect has a weapon and officers have an objectively reasonable belief their safety is in danger. That may be, but at this juncture, the Court considers only the well-pled allegations in the Plaintiff's Amended Complaint. There are no factual allegations that Mr. Valverde held a weapon at the time that he was fired upon and no allegation as to Officer Dodge's belief or the reasonableness of it. Thus the Court agrees with the Magistrate Judge's recommendation that this claim not be dismissed and overrules Officer Dodge's objection.

## B. Liability of the City

Ordinarily, municipalities cannot be held liable for the acts of their employees. However, a municipality can be liable for unconstitutional conduct of an employee if it had a "policy" or "custom" that was the moving force behind the conduct and the injury that resulted. *See Dodds*

*v. Richardson*, 614 F.3d 1185, 1201–02 (10th Cir. 2010); *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). To be cognizable *Monell* claim, the plaintiff must allege (1) the existence of the policy or custom and that (2) the city intended the conduct to occur or was deliberately indifferent to the possibility that conformance with the custom or policy would result in unconstitutional conduct. *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).

The Plaintiff's claim for municipal liability is presented in a peculiar posture because the Plaintiff has urged four distinct theories upon which the theory of municipal liability could be based: (1) the City had an informal custom of "shoot first, ask later"; (2) the City failed to train or supervise its officers; (3) the City had an unconstitutional formal policy; and (4) the City ratified Officer Dodge's conduct. The Magistrate Judge found that the factual allegations for the formal-policy and ratification theories lacking and dismissed them, and there is no objection to such determination. Thus, Court understands that the Plaintiff will not be proceeding on these theories, and the only question is the sufficiency of pleading in support of municipal liability based on an informal custom of "shoot first, ask later" and failure to train or supervise its officers.

### 1. *Informal Custom*

"Municipal liability may be based . . . on an informal custom so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010). "In attempting to prove the existence of such a continuing, persistent and widespread custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals

were mistreated by the municipality in a similar way." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

The City objects to the Magistrate Judge's finding that there are adequate allegations in the Amended Complaint that the City had a custom of "shoot first, ask later" that fostered inappropriate use of force. Specifically, it contends that the Magistrate Judge improperly considered other cases filed in this District that were identified in the Amended Complaint, and that the Amended Complaint contains no particular factual allegation of the existence of an informal custom within the City.

The City is correct that courts should not look outside the pleadings (an ironic proposition given its argument on the video) to determine their sufficiency. But here the Amended Complaint contains a conclusory allegation that the City has "cultivated a culture where officers are trained and encouraged to . . . 'shoot first' (ask questions later) deadly force practice." # 27, ¶ 33. This allegation is then followed by three specific examples of the Denver Police Department using deadly force against unarmed which the Plaintiff contends demonstrate the alleged custom. # 27, ¶ 34. Remembering that the focus of the Motion to Dismiss is on the sufficiency of the allegations to state a claim, the Court reads the conclusory statement together with the examples treating the specific examples as true. The three examples include different individuals and span a significant time period. The outcome of any of the lawsuits is not relevant to the issue at hand. Taking the allegations as true, they could plausibly demonstrate the existence of an informal custom or practice that resulted in use of excessive force, and therefore the allegations are sufficient to state a *Monell* claim.

  *2. Failure to Train*

To prevail on a failure-to-train theory, a "plaintiff must prove the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need for additional training." *Jenkins*, 81 F.3d at 994. A plaintiff must cite "a specific deficiency" in the city's training that was so "closely related to his injury" it can fairly be considered "the moving force behind his injury." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010).

In its objections, the City argues the Amended Complaint lacks factual allegations that its officers were not properly trained and that it had had notice of its failure to train. The failure-to-train theory arises from the same allegations as the informal-custom theory. The examples of similar alleged DPD conduct constitute specific factual support for her belief that Denver has failed to train its officers. # 27, ¶ 34. Moreover, the Plaintiff cites the specific deficiencies in the City's training that caused Mr. Valverde's death — DPD's firearms discharge policy leaves "imminent" and "imminent threat" undefined, and it does not mandate warnings prior to the use of deadly force. # 27, ¶ 37. This is sufficient to state a plausible *Monell* claim. Accordingly the Magistrate Judge's recommendation is adopted and the City's objections overruled.

## IV. CONCLUSION

Reaching the same conclusion as did the Magistrate Judge, the Recommendation (**# 41**) is **ADOPTED** and the Defendants' Motion to Dismiss (**# 30**) is **DENIED**. However, the *Monell* claim will proceed on only two theories: existence of an informal custom and the City's failure to adequately train or supervise its officers.

**DATED** this 17th day of August, 2017.

**BY THE COURT:**

Marcia S. Krieger
United States District Court